# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**09-CV-23225-Graham-Torres**

CIVIL ACTION NO. _____

|  |  |
|---|---|
| MARKUS HOCHULI, individually And On Behalf of All Others Similarly Situated, ) ) ) | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

MARKUS HOCHULI, individually And
On Behalf of All Others Similarly Situated, )
)
)
Plaintiff, )
)
vs. )
)
LEONARDO DELGADO, JAMES W. )
FOLAND, NICHOLAS SWISCHER, )
ROBERT DAVIS, and JULIO SAN JUAN, )
)
Defendants. )
)
)

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF
FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

FILED by _VT_ D.C.
ELECTRONIC

**Oct. 23, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of SEC filings by Carmel Energy, Inc. ("Carmel"), as well as regulatory filings, reports, projections, and statements issued by the Company, corporate resolutions, stock transfer agent records and other documents concerning the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

This is a federal class action on behalf of purchasers of Carmel securities between December 15, 2007 and August 31, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). As alleged herein, defendants published a series of materially false and misleading statements which defendants knew and/or recklessly disregarded were materially false and misleading at the time of such

publication, and which omitted to reveal material information necessary to make defendants'

statements, in light of such material omissions, not materially false and misleading.

## JURISDICTION AND VENUE

1.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of

the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by

the United States Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

3.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and

28 U.S.C. § 1391(b).   Carmel maintains its principal place of business in this District, Defendant

Delgado is a resident of this District, and many of the unlawful acts and practices complained of

herein occurred in substantial part in this District.

4.      In connection with the acts alleged in this complaint, defendants, directly or

indirectly, used the means and instrumentalities of interstate commerce, including, but not

limited to, the mails, interstate telephone communications and the facilities of the national

securities markets.

## PARTIES AND THE COMPANY

5.      Plaintiff **MARKUS HOCHULI**, as set forth in the accompanying certification,

incorporated by reference herein, purchased the common stock of Carmel at artificially inflated

prices during the Class Period as a result of defendants' unlawful acts, and has been damaged

thereby.

6.      Non-party **CARMEL ENERGY, INC.** ("Carmel" or the "Company") is a

Delaware corporation with its principal place of business at 2600 Douglas Road, Suite 303,

2

Miami, Florida. 33134.  Carmel is an oil and gas company that engages in the development and sale of oil and gas products.  During the Class Period, the defendants perpetrated a fraudulent scheme to sell 4,000,000 shares of Carmel common stock at $.50 per share in an offering of said Carmel stock commenced pursuant to the registration exemption afforded under Regulations of the Securities Act of 1933, based upon a series of materially false and misleading statements.

7.      Defendant **LEONARDO DELGARDO** ("Delgado") was, during the Class Period, a Director, Chairman of the Board of Directors, and Chief Executive Officer of the Company.

8.      Defendant **JAMES W. FOLAND** ("Foland") was, during the Class Period, a Director of the Company.

9.      Defendant **NICHOLAS SWISCHER** "("Swischer") was, during the Class Period, a Director of the Company.

10.     Defendant **ROBERT DAVIS** ("Davis") was, during the Class Period, a Director of the Company.

11.     Defendant **JULIO SANJUAN (**"SanJuan") was, during the Class Period, a Director and Chief Financial Officer of the Company.  ("The defendants referenced above are referred to collectively herein as the "Individual Defendants.")

12.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors

3

meetings and committees thereof and *via* reports and other information provided to them in connection therewith.

13.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed to the class in connection with the sale of Carmel stock as alleged herein are the collective actions of the narrowly defined group of defendants identified above.   Each of the above directors of Carmel, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein.   Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

14.    As directors and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's common stock would be based upon truthful and accurate information.   The

4

Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Carmel, each of the Individual Defendants had access to the adverse undisclosed information about Carmel's agenda, business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made about Carmel and its business materially false and misleading.

16.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various investor communications, and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was fully briefed about or provided with copies of the communications alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the investor communications detailed herein and is therefore primarily liable for the representations contained therein.

17.    Each of the Individual Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Carmel's common

stock by disseminating materially false and misleading statements and/or concealing material adverse facts.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of Carmel between December 15, 2007 and August 31, 2008, inclusive (the "Class") and who were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the Company during the Class Period, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

19.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Carmel common shares were purchased by over forty individuals and entities geographically dispersed throughout the world. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are at least forty members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Carmel or its current and/or former transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

20.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

6

21.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

22.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the agenda, finances, business, operations and management of Carmel; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

23.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

24.     In connection with the sale of Carmel common stock to Plaintiff and the Class during the Class Period, the Individual Defendants misrepresented and/or omitted material facts concerning the use of the proceeds to be raised on behalf of Carmel.  For example, the Individual Defendants represented that Carmel's funds would be used:  (a) to fund its oil and gas operations

7

pursuant to the purported business plan, use of proceeds plans, and oil production projections prepared and disseminated by the Individual Defendants; (b) retain appropriate auditors to properly prepare and provide certified audited financial statements in conformity with S.E.C. rules and regulations and Generally Accepted Accounting Principles (GAAP); adequate for S.E.C. filings; (c) retain competent securities counsel to bring all delinquent S.E.C. filings going back to 1996 up to date, and bring Carmel into full and timely regulatory compliance with S.E.C. filings; (d) apply for application for listing of Carmel stock on over-the-counter bulletin board (OTCBB) pursuant to Rule 15c-211 so that Carmel common stock could commence active trading in over-the-counter markets; and (e) expand the Company's core business and return the Company to profitability; and (f) conduct Carmel's business in accordance with the above-referenced stated objectives as represented to the Class.

25.   Individual Defendants failed to disclose, however, that they did not intend to use the funds raised through common stock sales to the Class for the aforementioned purposes purported, but, rather, to embark upon a scheme to acquire a higher ownership percentage in Carmel than what they represented to the Class while they were selling Class members shares of Carmel stock.

26.   To this end, the Individual Defendants did not complete Carmel's audited financials, did not retain S.E.C. counsel, did not bring Carmel into S.E.C. reporting compliance, did not apply or otherwise obtain OTCBB listing for Carmel stock, and did not use the proceeds of the funds invested by the Class in accordance with the Individual Defendants' purported business plan, use of proceeds plan, and oil production projections, or to otherwise bring Carmel into compliance with S.E.C. regulations and filing requirements.  Instead, they retained counsel for the purpose of advancing their own personal agendas contrary to the representations they

made while they were selling Carmel stock to the Class, on which Plaintiff and other Class members relied in making their decisions to purchase Carmel stock at $.50 per share during the Class period.

27.     Furthermore, the Individual Defendants represented during the Class Period (to prospective investors, investment advisors, consultants, attorneys, and the Company's transfer agent) while they were selling Carmel stock to the Class at $.50 per share that Carmel had a total of 30,000,000 authorized shares and 21,013,689 validly issued and outstanding shares of its common stock.  Moreover, the Individual Defendants represented to the Class that they would not increase the number of Carmel's authorized shares so as to not dilute the equity interest of the Class. Immediately upon selling Carmel shares to the Class, however, the Individual Defendants inexplicably terminated the Company's stock transfer agent for no valid reason; altered the shareholder list (before turning it over as a purported certified shareholder list to their own chosen replacement stock transfer agent);  cancelled shares previously ratified and issued to Company consultants as validly issued and outstanding; issued 20,000,000 shares of Carmel common stock to Defendant Delgado at a price of $.01 per share; increased Carmel's authorized shares from 30,000,000 to 90,000,000; and threatened to abandon all previously stated plans represented to Carmel investors unless everyone agreed to these radical and fraudulent actions.

28.     In furtherance of their above-referenced fraudulent scheme and course of conduct, the Individual Defendants misrepresented and omitted material facts concerning Carmel's 1 for 25 reverse split of its common stock in 1995. Specifically, Defendant Delgado consistently represented to the public, including but not limited to, Class members, other investors, prospective investors, the S.E.C. (including public filings signed by Defendant Delgado), Carmel's stock transfer agent (including in a November 28, 2007 certification signed by

9

Defendant Delgado), the State of Delaware, and Carmel officers, directors and advisors, that Carmel had validly effectuated the 1 for 25 reverse split of its common stock in 1995, and was properly and accurately reporting its total number of common shares issued and outstanding thereafter – including during the Class Period herein  - based upon said reverse split. There were never any issues raised by the Individual Defendants to the Class about these matters including in personal meetings between defendant Delgado and  Class members during and after the Class Period. Through the present date, the Individual Defendants have concealed from the Class and have notified the Class of any alleged problems with the 1995 reverse split. However, some Class members have recently discovered that, on or about July 22, 2008 (13 years later, and several months after inducing Class members to pay $.50 per share for Carmel common stock), the Individual Defendants purportedly passed a unanimous corporate resolution, declaring that, in 1995, before adjustment for the reverse split, the Board of Directors inexplicably agreed to issue defendant Delgado 36,849,050 shares of common stock, and that the Individual Defendants directed the issuance of a certificate to Defendant Delgado for 13,978,660 shares of Carmel common stock.

29.     In addition, during the Class Period, in connection with sales of Carmel common stock to the Plaintiff and the Class, the Individual Defendants issued written statements concerning Carmel's oil and gas reserves and other assets, as well as certain projections, on which Class members relied in making their decisions to purchase Carmel stock at $.50 per share during the Class Period.

30.     The written statements and projections issued by the Individual Defendants included a business plan and set of projections falsely representing, among other things, that

Carmel would recover 136,500 barrels of oil per year, and that the proceeds of the sales of Carmel stock to the Class would be used for the recovery and production of Carmel's reserves. In addition, the Individual Defendants stated that Carmel's oil wells would be treated with certain forms of stimulation for the purpose of maximizing oil recovery and production. The Individual Defendants, however, took contrary steps pursuant to their fraudulent scheme as they raised funds from the Class. As a result, none of the projections were met.

31.     Also, rather than retain S.E.C. counsel, the Individual Defendants retained alternate personal counsel using company funds to advance their personal agenda in attempt to defend their fraudulent acts and conduct set forth above.

32.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Carmel common stock by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its agenda, business and operations, as alleged herein.

33.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Carmel's agenda, business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Carmel and its business, prospects and operations, thus causing the Company's common stock to be sold to the Class at artificially inflated prices. Defendants'

11

materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, based upon the defendants' fraud, thus causing the damages complained of herein.

## CAUSATION AND ECONOMIC LOSS

34.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the damages suffered by plaintiff and the Class.

35.    During the Class Period, plaintiff and the Class purchased securities of Carmel at artificially inflated prices based upon defendants' fraud and were damaged thereby. The price of Carmel common stock declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## ADDITIONAL SCIENTER ALLEGATIONS

36.    As alleged herein, defendants acted with scienter in that each defendant knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the class; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Carmel, their control over, and/or receipt and/or modification of Carmel's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Carmel, participated in the fraudulent scheme alleged herein.

12

37.     Defendants were further motivated to engage in the fraud alleged herein because it enabled them to raise money to use in order to advance their own personal agendas, including increasing their own share and percentage ownership in the Company.  Upon information and belief, Defendant Delgado was issued 20 millions shares at a price of $.01 per share during the Class Period, which issuance was ratified by the Individual Defendants, each of whom received shares from Delgado.

## NO SAFE HARBOR

38.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Carmel who knew that those statements were false when made.

13

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

39.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public regarding Carmel's agenda, finances, business, capitalization, operations, management, plans and prospects and the intrinsic value of Carmel common stock; (ii) cause plaintiff and other members of the Class to purchase Carmel common stock at artificially inflated prices based on defendants' fraud.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, jointly and individually (and each of them) took the actions set forth herein.

41.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

42.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the agenda, finances, business, capitalization, operations, plans and prospects of Carmel as specified herein.

14

43.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Carmel's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Carmel and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Carmel common stock during the Class Period.

44.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the Class which they knew or recklessly disregarded was materially false and misleading.

15

45.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts.   Such defendants' material misrepresentations and/or omissions were done knowingly or with recklessly for the purpose and effect of concealing Carmel's agenda, finances, operating condition and business prospects from the investing public and supporting the artificially inflated price of its common stock.   As demonstrated by defendants' overstatements and misstatements of the Company's agenda, finances, business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by recklessly refraining from taking those steps necessary to discover whether those statements were false or misleading.

46.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Carmel common stock was artificially inflated during the Class Period.   In ignorance of the fact that market prices of Carmel's common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Carmel  common stock during the Class Period at artificially high prices and were damaged thereby.

47.     At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.   Had plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that

16

Carmel was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Carmel common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

48.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

49.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against All Defendants

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Carmel within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements provided by the Individual Defendants in, among things, the Company's business plan and projections, and disseminated to the Class, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's business plans, projections, reports, public filings, other documents used to sell

17

Carmel stock to the Class, and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53.     As set forth above, the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

18

D.    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 and any appropriate state law remedies to assure that the Class has an effective remedy; and

E.    Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:   October 23, 2009

SAXENA WHITE, P.A.

_____
Joseph E. White, Esquire
2424 Federal Highway
Suite 257
Boca Raton, FL 33431
Telephone:  (561) 394-3399
Facsimile:  (561) 394-3382

**Local Counsel for Plaintiff**

Edward David, Esquire
Edward David & Associates, LLC
3 Becker Farm Road
Roseland, New Jersey 07039
Telephone:  (973) 994-3003
Facsimile:  (973) 994-4949

**Counsel for Plaintiff**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Markus Hochuli, certify that:

1. I have reviewed the complaint and I authorize you to act on my behalf in this matter in applying for Lead Plaintiff status, and designate you and your firm as our counsel in this action for all other purposes.

2. I did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. I am willing to serve as a Lead Plaintiff. I understand that a Lead Plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include providing testimony at deposition and trial, if necessary.

4. I represent and warrant that I am authorized to execute this Certification on behalf of the purchasers of the subject securities described herein (including, as the case may be, myself, any co-owners, any corporations or other entities, and/or any beneficial owners).

5. I will not accept any payments for serving as a representative party on behalf of the class beyond the purchaser's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is unaffected by my decision to serve as a representative party or Lead Plaintiff.

7. I have listed below all my transactions in the securities of Carmel Energy, Inc. during the Class Period as follows (attach additional pages if necessary):

| Type of Security | Purchase/Acquisition or Sale/Disposition | Quantity | Trade Date (mm/dd/yy) | Price per Share/ Security ($) |
|---|---|---|---|---|
| Common Stock Shares | Purchase | 40,000 | May 30, 2008 | $.50 |
| | | | | |
| | | | | |
| | | | | |

8. During the three years prior to the date of this Certification, I have not sought to serve and I have not served as a representative party for a class in an action filed under the federal securities laws except as described below (if any):

I declare under penalty of perjury, under the laws of the United States, that the foregoing information is true and correct.

Executed this  19th day of  September, 2009.

Markus Hochuli
Name

Signature

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

MARKUS HOCHULI

## DEFENDANTS

LEONARDO DELGADO, JAMES W. FOLAND, NICHOLAS SWISCHER, ROBERT DAVIS, and JULIO SAN JUAN

**(b)** County of Residence of First Listed Plaintiff   Switzerland
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Miami
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Saxena White
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
561-394-3399

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☑ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☑ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

1:02cv23225-Graham Torres

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☑ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Re-filed- (see VI below)
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S):

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO     b) Related Cases ☐ YES ☑ NO

JUDGE                                DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

15 U.S.C. §§ 78j(b) and 78t(a); Securities Class Action

LENGTH OF TRIAL via  5   days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   October 23, 2009

FOR OFFICE USE ONLY

AMOUNT  350     RECEIPT #  54787_5